SAMUEL C. NELSON v. STATE OF NEBRASKA.

FILED MAY 20, 1910.   No. 16,511.

1. **Information: SURPLUSAGE.** "Averments in an information of mat-
ters which are immaterial, and not necessary ingredients of the
offense charged, may be rejected as surplusage." *Hase v. State*,
74 Neb. 493.

2. ———: **EMBEZZLEMENT: DESCRIPTION OF PROPERTY.** Under section
121 of the criminal code, an information charging an agent with
the embezzlement of money in a specific sum named contains a
sufficient description of the property embezzled.

3. **Embezzlement: INSTRUCTIONS.** An instruction which permits a jury
to convict an agent of embezzlement without finding that by a
felonious, adverse use or holding he deprived his principal of the
property alleged to have been embezzled is erroneous.

ERROR to the district court for York county: GEORGE
F. CORCORAN, JUDGE. *Reversed.*

*Gilbert Bros.* and *W. A. Prince,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George
W. Ayres, contra.*

ROSE, J.

In a prosecution by the state in the district court for
York county, Nebraska, Samuel C. Nelson, defendant,
was convicted of embezzling $1,900 belonging to his prin-
cipal, the York Alfalfa Milling Company, and for that
felony was sentenced to serve a term of five years in the
penitentiary. As plaintiff in error he now presents for
review the record of his conviction.

The information charges: "Samuel C. Nelson, on or
about the 15th day of April, 1909, in said county of York
and State of Nebraska, he the said Samuel C. Nelson,
being then and there the agent and officer of the York
Alfalfa Milling Company, a certain incorporated Com-
pany, and he, the said Samuel C. Nelson, not being a
person within the age of eighteen years, and not being

then and there an apprentice, did then and there by virtue of such employment, as agent and officer of said corporation, the York Alfalfa Milling Company, receive and take in his possession certain money, to wit, $10,000, and certain checks of the amount and value of $10,000, all of which checks and money was and is the property of said York Alfalfa Milling Company, a corporation, his principal, and did then and there fraudulently, unlawfully and feloniously convert to his own use and embezzle said checks and money without the assent of said York Alfalfa Milling Company, his principal."

The general charge that defendant embezzled "certain checks of the amount and value of $10,000," without any further description of the checks, is said to be fatally defective. If this point is well taken, a question not decided, the information, with all reference to the checks omitted, charges defendant with the embezzlement of money in the sum of $10,000. The rule is that "averments in an information of matters which are immaterial, and not necessary ingredients of the offense charged, may be rejected as surplusage." *Hase v. State*, 74 Neb. 493; *Hurlburt v. State*, 52 Neb. 428; *Blodgett v. State*, 50 Neb. 121; *Hall v. State*, 40 Neb. 320. After eliminating that part of the information relating to the checks, defendant is charged with the embezzlement of money in the sum of $10,000. In charging accused with the embezzlement of money, a more specific description of the embezzled property than that given in the information is unnecessary. *State v. Knox*, 17 Neb. 683; *Mills v. State*, 53 Neb. 263.

The state attempted to prove the embezzlement of several items of property, but the trial court limited the jury to the consideration of two, which are described in instructions 10 and 11 as follows:

"10. The jury are instructed that if you believe from the evidence, beyond a reasonable doubt, that the draft of $1,000 mentioned in the evidence, issued by the First National Bank of York on April 20, 1909, was received

by the defendant Nelson at and within the county of York in the state of Nebraska; that he was at said time and place an officer or agent of the York Alfalfa Milling Company, a corporation; that the draft or money represented thereby was at said time the property or money of the said York Alfalfa Milling Company and that he received the same by virtue of his said employment by said company; that he then and there or shortly thereafter formed the fraudulent and felonious intent and purpose to convert said draft and the money represented thereby to his own use and to deprive the said York Alfalfa Milling Company of said money without the assent of said York Alfalfa Milling Company, the owner thereof; that he did not, at any time thereafter, pay over or account for the money represented by said draft to his said employer; and if you further find from the evidence, beyond a reasonable doubt, that he did not retain the amount represented by said draft claiming the same in good faith to be due him for fee, commission or charges on collections made or services rendered by him; then, in case you find each and all of said elements above mentioned to be shown by the evidence beyond a reasonable doubt, you will find the defendant guilty in manner and form as he stands charged in the information, and you will further find in your verdict the amount and value of the draft at said time and include the amount so found in your verdict."

"11. Upon the question of the transfer of $900 in a certain bank in Kansas City, Missouri, to the defendant Nelson, mentioned in the evidence of the witness Laurenson as having occurred in the month of June, 1909, if the jury believe from the evidence, beyond a reasonable doubt, that the fraudulent purpose was formed by the defendant to convert said item of $900 to his own use and that the decisive steps taken to carry out that purpose were had and done at and within the county of York in the state of Nebraska; that said defendant was at said time and place an officer or agent of the York Alfalfa Milling Company, a corporation, that the item of $900 was, at said

time the property or money of the said York Alfalfa Milling Company and that he received the same by virtue of his said employment by said company; and that, as above stated, he formed the fraudulent and felonious intent and purpose to convert said money to his own use and to deprive the said York Alfalfa Milling Company of said money without the assent of said York Alfalfa Milling Company, the owner thereof; that he did not, at any time thereafter, pay over or account for said money to said employer; and if you further find from the evidence, beyond a reasonable doubt, that he did not retain said money claiming the same in good faith to be due him for fee, commission, or charges on collections made or services rendered by him; then, in case you find each and all of said elements above mentioned to be shown by the evidence, beyond a reasonable doubt, you will find the defendant guilty in manner and form as charged in the information, and you will further find in your verdict the amount and value of said money at said time and include the amount so found in your verdict."

The jury found defendant guilty of the embezzlement of $1,900. This sum was composed of two items, one being the draft for $1,000 mentioned in the tenth instruction, and the other being the credit of $900 described in the eleventh. Defendant now insists there is no proof to show that the draft was embezzled in York county, as charged in the information. There is evidence tending to show these facts: The York Alfalfa Milling Company was incorporated at York, March 22, 1909, for the purpose, among others, of constructing and operating an alfalfa mill at York. Defendant was a director of the corporation and also a member of the executive committee. At its first meeting, March 23, 1909, he was instructed to act for the corporation in negotiating for the purchase of a building owned by the Fairmont Creamery Company at a price not to exceed $1,500. April 20, 1909, G. M. Stryker, who was treasurer of the York Alfalfa Milling Company, drew a check for $1,000 on the First National

Bank of York, and the same day the bank issued to him a draft on the First National Bank of Chicago for $1,000, which, after having been indorsed by defendant, was by him presented to and cashed by the National Bank of Commerce of Kansas City, April 24, 1909. This is the draft mentioned in the tenth instruction and the amount of which is included in the verdict. Defendant testified he received the draft at Kansas City, presented it for payment there, and that the money was needed in the negotiations for the building owned by the Fairmont Creamery Company. The evidence fails to show that the draft was ever in defendant's possession in Nebraska, or that he was in York county between the date on which the draft was purchased by Stryker and the date on which it was cashed in Kansas City. As to this item, there is a failure to prove embezzlement in York county, and for that reason the verdict cannot be allowed to stand.

Defendant insists further that the tenth instruction was given as a complete statement of the law applicable to the embezzlement of the draft or of the money realized therefrom, and that it permitted a conviction without a finding by the jury that defendant in fact embezzled the property. Manifestly the trial court intended to include in the tenth instruction all the elements essential to a conviction, as to the item mentioned therein, and, having thus attempted to cover the entire subject, no material element of the crime could be omitted without error. *Higbee v. State,* 74 Neb. 331. According to the instruction, a finding that defendant deprived his principal of the property by a felonious, adverse use or holding was not essential to a conviction. The omission is apparent. The forming of a felonious intent on part of defendant to convert to his own use property of his principal is mentioned as an element of the crime, but an unexecuted purpose to embezzle is not embezzlement. It has not escaped observation that the jury were required to find, before convicting defendant, that he did not pay over to his principal, or account to the latter for, the money represented

Nelson v. State.

by the draft, and also that he did not retain it in good faith for services or charges on collections; but failure to pay over or account for money received by defendant as agent would not amount to embezzlement, if his principal was not in fact deprived of the property by a felonious, adverse use or holding.   Under the information, actual conversion with a felonious intent was essential to a conviction.   *Chaplin v. Lee*, 18 Neb. 440; *McAleer v. State*, 46 Neb. 116; *Hamilton v. State*, 46 Neb. 284; *Higbee v. State*, 74 Neb. 331.   On account of the omission described, therefore, the tenth instruction is erroneous. Instruction 11 is not free from the same vice.   It describes as elements of embezzlement a fraudulent purpose on part of defendant to convert to his own use an item of $900 and the "decisive steps taken to carry out that purpose."   "Decisive steps", in the connection in which the words are employed, do not properly define the overt acts constituting embezzlement and should not have been used for that purpose in the charge.

For the reasons given, the judgment below must be reversed, but to prevent the recurrence of errors appearing in other instructions the following observations are made:   The court in defining "embezzlement" made a reference to the felonious removing or secreting of personal property.   This part of the charge should not have been given for the reason it had no proper application to any question submitted to the jury for determination.   An instruction defining "conversion" was likewise inapplicable to the issues.   In addition, the jury, by one of the instructions, were erroneously permitted to consider irrelevant testimony adduced by the state for the purpose of proving the embezzlement of items withdrawn from the consideration of the jury by another instruction.

REVERSED AND REMANDED.